**In re James C. CASLIN, Debtor.**

**Bankruptcy No. 3–84–02766.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 24, 1989.

Rudolph A. D'Amico, Dayton, Ohio, for Debtor.

Richard C. Knostman, William Patrick McGuinn, Dayton, Ohio, for City of Dayton.

James C. Caslin, Trotwood, Ohio, Debtor.

## DECISION AND ORDER GRANTING DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the motion of James C. Caslin, debtor, to re-open his bankruptcy case for the purpose of adding the City of Dayton, Ohio as a creditor. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### FACTS

On December 20, 1984 the debtor filed a petition in bankruptcy pursuant to chapter 7 of the Bankruptcy Code, but did not list the City of Dayton, Ohio, as a creditor in his bankruptcy schedules. The trustee in bankruptcy reported on July 23, 1985 that the unencumbered assets of the estate were insufficient to produce a dividend for unsecured creditors and filed a "Notice of Abandonment of Burdensome Property." On August 30, 1985 the court approved the trustee's report of no assets and ordered the closing of the estate.

The following stipulations of facts has been filed by the parties:

1. Debtor, James C. Caslin, was served with a "Notice Nuisance", for 821 Goodlow Avenue, Dayton, Ohio, on November 7, 1985, and structures were demolished on August 20, 1986. Identified on Montgomery County, Ohio, Auditor's and Treasurer's Records as Parcel No. R72 124–14–122. Amount assessed: $5,117.02.

2. Debtor, James C. Caslin, was served with a "Notice of Nuisance", for 818 Strawberry Row, Dayton, Ohio, on July 26, 1984 and structures were demolished on March 7, 1985. Identified on Montgomery County, Ohio, Auditor's and Treasurer's Records as Parcel No. R72–124–14–121. Amount assessed: $4,870.94.

3. The City of Dayton, filed Case No. 87 CVF 11769, in the Municipal Court of Dayton, on September 11, 1987, claiming $9,987.96, for demolishing the structures and demanding judgment against the debtor. Said action is stayed pending this matter.

4. The costs of demolishing the structures are funded by Community Development Block Grants from The United States Department of Housing and Urban Development, and are not required to be reimbursed to said federal agency.

5. The debtor turned over his deed to said properties to the Trustee at the "341" Hearing, and same was not returned to the debtor.

6. The debtor was not served with a copy of the Trustee's Notice of Abandonment of Burdensome Property and Report of No Assets.

7. Said properties are secured by first and second mortgages to Wright–Patt Credit Union, Inc., and a third mortgage to John C. and Opal M. Clouse.

8. Sarah E. Harris, as Treasurer of Montgomery County, Ohio, filed a Complaint to foreclose the lien of real estate taxes on June 17, 1988, including the Nuisance Abatement Assessment, against debtor and secured parties describing the property identified herein as 818 Strawberry Row, debtor's EXHIBIT 2, attached.

9. The City Accountant of The City of Dayton, Ohio, on September 14, 1987, certified the Nuisance Abatement Costs for both properties to the Montgomery County Auditor, as Special Assessments

to be placed on the Tax Duplicate to be collected as other real estate taxes, debtor's EXHIBIT 1, attached.

At the hearing on his motion to reopen, the debtor testified that he did not include the City of Dayton as a creditor because the costs of demolishing the building did not exist at the time he filed his bankruptcy petition. The debtor also stated that it was his understanding that, following the filing of his bankruptcy petition, he had no further interest in his real estate and, although he continued to receive tax notices for the properties, he believed the issuance of the tax notices was due to a failure of Montgomery County to update its computer files.

## CONCLUSIONS OF LAW

The City of Dayton opposes the reopening of debtor's bankruptcy case and contends that 1) the debtor has not shown a sufficient justification for reopening the case, and 2) at the time debtor filed his petition in bankruptcy, debtor's obligation to the city was not a "claim" as that term is defined by 11 U.S.C. § 101(4).

With respect to the debtor's motion to reopen his bankruptcy case, this court agrees with the view expressed by the Court of Appeals for the Seventh Circuit:

> In a no-asset bankruptcy where notice has been given pursuant to Rule 203(b), a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design. *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322, 324 (1983).

A similar position has been adopted by the circuit court of appeals for this court with regard to determining whether a debtor may amend his schedules:

> Under current law, [the debtor] may be prevented from amending her schedule only if her failure to include the creditor on the original schedule can be shown to

have prejudiced him in some way or to have been part of a scheme of fraud or intentional design. *Rosinski v. Boyd (In re Rosinksi)*, 759 F.2d 539, 541 (6th Cir. 1985).

The Sixth Circuit further explained that—

> [T]he key inquiry is whether [the debtor's] failure to include [the creditor] on the original schedule of assets and liabilities has deprived him of remedies available under the Bankruptcy Code or whether there was evidence that the exclusion was fraudulent or intentional. *Id.*

■ In a proceeding, such as in the instant matter, where there are no assets from which creditors may be paid dividends, there has been no prejudice to creditors omitted from the schedules. *Id.* at 542.

■ In addition to the absence of prejudice to the omitted creditor, a debtor must advance a sufficient justification for reopening to demonstrate that he did not intentionally avoid listing the creditor. *Matter of Pantone*, 56 B.R. 541 (Bankr.S.D.Ohio 1986). The debtor has satisfied that burden. It is evident from the debtor's testimony that he had no understanding that, although there may have been doubt whether the City of Dayton had a claim at the time of bankruptcy, he could have listed the City of Dayton as a creditor in order to permit the bankruptcy court to determine whether the City of Dayton had a claim. A debtor's misunderstanding of the existence of a debt is a sufficient justification for reopening a case. *In re Meile*, 36 B.R. 719 (Bankr.S.D.Ill.1984).

The City of Dayton maintains that it had no "claim" [1] against the debtor at the time he filed his petition in bankruptcy because the costs of demolishing the buildings were not incurred until after the filing of the

---

1. "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(4).

bankruptcy petition and, therefore, the obligation for the costs of demolition was not discharged in the debtor's bankruptcy proceedings. With regard to the Strawberry Row property, for which a "Notice of Nuisance" was sent to the debtor prior to the filing of bankruptcy, the court finds that the City of Dayton was asserting a claim prior to the filing of the bankruptcy petition (*See* n. 2). Nevertheless, as discussed below, resolution of the instant matter does not end with a characterization of the demolition costs as a "claim" or "non-claim" but rather with the finding that the costs for one of the properties were incurred during the administration of the debtor's estate and represent an administrative expense.

Because legislative acts governing the abatement of public nuisances are based on a concern for the health and safety of the public, this court believes it appropriate to look to the case law concerning other types of acts designed to protect the public's health and safety. In this court's view, the costs sought by the City of Dayton for demolishing the debtor's buildings in order to abate a nuisance are closely akin to the costs incurred by a governmental unit in responding to the improper disposal of hazardous substances. With respect to the status of such "response costs," this court's circuit court of appeals has held that where, following the filing of a chapter 7 petition in bankruptcy, a state incurs costs in responding to the improper disposal of hazardous substances, these costs are to be treated as administrative expenses:

It is undisputed that the hazardous wastes still within the debtor's estate after the 1984 conveyance presented a danger to the public's health and safety. The State of Tennessee, in the absence of compliance by the debtor's estate, was entitled by its own law to expend funds to assess the gravity of the environmental hazard. We thus find those expenses to be actual and necessary, both to preserve the estate in required compliance

with state law and to protect the health and safety of a potentially endangered public. *Lancaster v. State of Tennessee (In re Wall Tube and Metal Products Co.)*, 831 F.2d 118, 124 (6th Cir.1987).

In reaching this conclusion, one of the cases the Sixth Circuit found to be highly persuasive was *In re Vermont Real Estate Investment Trust*, 25 B.R. 804 (Bankr.Vt. 1982). In that case, following the filing of a bankruptcy petition, part of the estate premises collapsed due to the weight of snow and the collapse created a dangerous condition. Thereafter, the city ordered the debtor to demolish the remainder of the collapsed building and to remove the debris. Because the debtor failed to comply with that order, the city proceeded with the work. The bankruptcy court found that the work ordered and subsequently performed by the city was a proper administrative expense of the estate because it "was not only necessary for the preservation of the leasehold as part of the debtor's estate but it was also a matter of necessity for the safety and welfare of the public in general." *Id.* at 806.

In the instant proceeding, demolition of the Strawberry Row property took place after the filing of the debtor's petition in bankruptcy but before the property was abandoned by the trustee in bankruptcy. Therefore, in light of the views expressed by the Sixth Circuit in *Wall Tube*, the court finds that the costs incurred by the City of Dayton in demolishing the Strawberry Row property were chargeable to the debtor's estate and are administrative expenses. Unfortunately, the bankruptcy estate produced no funds to satisfy any administrative expenses. The City of Dayton is permitted, of course, to enforce its lien for these costs against the property itself, but may not attempt to collect the costs as a *personal* obligation of the debtor.[2]

With respect to the property located on Goodlow Avenue, the serving of the

---

**2.** Even if the costs of demolishing the debtor's building at Strawberry Row were not treated as administrative costs, there is authority to find that the conditions of the debtor's land, at the time he filed his petition in bankruptcy, created

a "claim" on behalf of the City of Dayton at that time and the claim is subject to discharge. *See Utah Division of Oil, Gas, & Mining v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 87 B.R. 662, 665 (Bankr.Colo.1988) ("As to the pre-peti-

"Notice of Nuisance," as well as the subsequent demolition of the building, occurred after the debtor's bankruptcy case was closed. No evidence was presented to demonstrate that any claim on behalf of the City of Dayton had accrued for the Goodlow Avenue property at the time of debtor's petition in bankruptcy. Upon the closing of the debtor's bankruptcy estate, the real estate was abandoned to the debtor by operation of law, 11 U.S.C. § 554(c), and he became liable for any subsequent obligations in connection with the property. Because the events giving rise to the obligation to the City of Dayton for demolition costs occurred after the estate was closed, the debtor's obligation to the city for these costs is unaffected by the debtor's bankruptcy proceedings.

For the foregoing reasons, it is hereby ORDERED that the debtor's motion to reopen his bankruptcy case is GRANTED. It is further ORDERED that the demolition costs associated with the Strawberry Row property are administrative expenses, but that the costs of demolishing the building at Goodlow Avenue are not administrative expenses nor claims discharged by the debtor's bankruptcy case.

tion activities of the Debtor which were carried on in Utah, that state's claim against the Debtor for violations of its environmental laws, including the failure to reclaim, are clearly "claims"

within the meaning of 11 U.S.C. § 101(4) and, as such, are subject to being dealt with in a plan and discharged as part of the Debtor's plan of reorganization.")