In re Albert R. PROSPERO, and Jill Prospero, Debtors.

Bankruptcy No. SA 88–02796JB.

United States Bankruptcy Court, C.D. California.

Nov. 29, 1989.

John P. Stodd, Stodd & Barnett, Santa Ana, Cal., Trustee.

Ross L. Edgell, Jr., Edgell & Edgell, Orange, Cal., Fritz Firman, Newport Beach, Cal., for debtors.

## MEMORANDUM OF DECISION

JAMES N. BARR, Bankruptcy Judge.

Debtors, Albert and Jill Prospero, have asked for reconsideration of my order entered on June 27, 1989, in which I granted the Trustee's motion to reopen the bankruptcy case and denied the Debtors' motion for an order that title to their residence revested in them when I ordered this case closed in August, 1988.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 11 U.S.C. § 1334(a), under which the district courts have original and exclusive jurisdiction of all cases under Title 11, 28 U.S.C. § 157(a), authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district and General Order No. 266, dated October 9, 1984 referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

The Debtors filed their voluntary Chapter 7 bankruptcy on May 9, 1988. The Trustee was appointed on June 28, 1988. Listed on schedule B–1 as property of the Debtor was a residence located in Orange, California.

The Debtors continued to reside in the subject property throughout the course of administration of this case by the Trustee, and the Trustee took no action to exercise control over the property until after the case was ordered closed in August, 1988. From commencement of this case to the present time, the Trustee made no payments on the mortgage against the property, and paid no real estate taxes thereon. The Debtors made all such payments through the time the property was sold to an independent third party in June of this year. The Debtors also apparently paid for improvements to the property post-petition, though details of such improvements and amounts paid therefor are not well-defined.

On August 22, 1988, the Trustee filed an application for an order that this bankruptcy case be closed and that the Debtors' residence remain in the bankruptcy estate as an unadministered asset. The Trustee gave no notice of that application to the Debtors, and I granted the relief sought therein by order entered August 26, 1988. On May 11, 1989 the Trustee filed a motion to reopen the bankruptcy case to sell the residence. On May 17, 1989, the Debtors filed a motion for an order revesting the residence in Debtors as abandoned property of the estate and for an order barring reopening of the case. Both motions were heard on June 5, 1989. By order entered on June 27, 1989, I granted the Trustee's motion to reopen the case and denied the Debtors' motion to revest the property in them. In accordance with an agreement between the Debtors and the Trustee, the property was sold and the net proceeds are held by the Trustee less the Debtors' $45,000 homestead exemption.

The Debtors' motion for rehearing and reconsideration of my June 27, 1989 order was timely filed, and the motion was heard on August 7, 1989. The Debtors argue that my order of August 26, 1988, (closing the case and ordering that the Debtor's residence remain in the estate), deprived them of property without due process, and that, therefore, my order of June 27, 1989, (denying them revestment of the property) merely compounded the wrong done them by my earlier order. Because of the constitutional proportions of the Debtor's motion, I will reconsider my prior order.

## ISSUES

The debtors assert several grounds for the proposition that my order of June 27,

1989 should be vacated. I will discuss those arguments in the context of what I consider to be the two main issues to be resolved, i.e.:

(1) Were the Debtors deprived of property without due process when I ordered that the bankruptcy case be closed and that the Debtors' residence remain an unadministered asset of the bankruptcy estate; and

(2) Are the Debtors entitled to an order that title to the subject property is revested in them?

## DISCUSSION

No person shall be deprived of property without due process of law. *U.S. Constitution, Fifth Amendment.* However, a mere unilateral expectation or an abstract need is not a "property interest" entitled to protection. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Thus, I must consider whether the Debtors have a protectable "property interest" in the residence. If a protectable property interest exists, then notice and an opportunity to be heard must be given before a court may deprive a party of such interest. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Here, *no* notice or opportunity to be heard was given so my inquiry is simply whether a protectable property interest is involved.

Guidelines for determining whether a constitutionally protected property interest exists have been provided by the Supreme Court: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The "legitimate claim of entitlement" to a right has also been characterized as a "reasonable expectation" to it. *Brady v. Gebbie,* 859 F.2d 1543, 1547 (9th Cir.1988).

Upon filing of the bankruptcy, an estate is created which includes all legal and equitable interests of the Debtor in property.

[11 U.S.C. § 541(a) ]. My order essentially maintained the status quo in providing that the property *remain* in the estate. The Debtors were dispossessed of their ownership rights in the subject property upon the filing of their bankruptcy petition. They now assert they had a reasonable expectation that the subject property would revest in them upon the closing of the case because:

(a) They made all payments due on mortgages of record against the property, and paid for substantial improvements to the property since commencement of this case; and

(b) They remained in the residence throughout the term of this case, and the Trustee never gave them any indication that he would sell or rent that property, or administer it in any way.

Bankruptcy Code Section 554(c) provides, "Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the Debtor and administered for purposes of section 350 of this title." Many cases have correctly held that "scheduled property not otherwise administered at the time of the closing of the case is abandoned to the Debtor by operation of law." *In re McGowan,* 95 B.R. 104, 106 (Bankr.N.D. Iowa 1988); *In re Caslin,* 97 B.R. 366, 370 (Bankr.S.D. Ohio 1989); *Behrens v. Woodhaven Association,* 87 B.R. 971, 973 (Bankr.N.D.Ill.1988). However, none of those cases dealt with the first clause of § 554(c), i.e., "unless the court orders otherwise ..." Here, as a consequence of the Trustee's application, I ordered otherwise, i.e., that the residence was to remain an unadministered asset of the estate after the case was closed. Such orders are not unique in bankruptcy cases, [See, *In re Hart,* 76 B.R. 774 (Bankr.C.D.Ca.1987) ] though they are seldom sought because few chapter 7 estates have unadministered assets of any value or potential value when it is time to close the case.

Section 554(c) explicitly provides for the exercise of judicial discretion as to whether

property will be abandoned upon closing of the case, and section 554(d) states, "unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." Thus, the Code clearly presents the possibility that property may not be abandoned to the Debtors when a case is closed.

As to the Trustee's inaction, I note that the Bankruptcy Act (in effect prior to enactment of the Bankruptcy Code in October, 1978) was silent as to the procedure to be followed to accomplish abandonment of property, and that there was "considerable authority for the proposition that a formal act [was] not absolutely essential and that any clear manifestation of the Trustee's intent to disclaim [would] suffice." *Collier on Bankruptcy*, 14th ed., Vol. 4a, § 70.42[3], p.504. (Citations of numerous cases referred to therein are omitted.) However, section 554 of the Bankruptcy Code makes specific provision for obtaining or accomplishing abandonment of property of the estate. No such result may obtain without notice to creditors and an opportunity for creditors and parties in interest to object thereto, except as may be allowed under section 554(c) and (d). Mere inaction by the Trustee does not accomplish abandonment. *In re Schmid*, 54 B.R. 78, 80 (Bankr.Ore.1985); Bankruptcy Rule 6007.

Therefore, because the Bankruptcy Code specifically provides for the exercise of judicial discretion as to whether property of the estate will be abandoned or retained in the estate upon closing thereof; because the Code provides that abandonment cannot be achieved by a trustee's inaction, or by actions short of notice to creditors of intent to abandon; because the Debtors' expenditures for mortgage payments etc., served their purposes as much as those of the Trustee (i.e., protecting their homestead exemption and their occupancy of the property from foreclosure), I have concluded that the Debtors' expectation that the property would be abandoned to them upon closing the case was not a reasonable expectation and does not rise to the level of a constitutionally protectable property interest.

Debtors argue further, however, that the Trustee's delay in administering the subject property constituted laches, and that equity requires that "justice be done to all parties." However, equity follows the law, not vice versa, [*In re Shoreline Concrete Company, Inc.*, 831 F.2d 903, 905 (9th Cir.1987)], and justice is not relegated to the province of equity alone. Debtors cite no law or authorities for the proposition that equitable principles of laches should apply to this situation, and I find no such application here.

I also find the Debtors' arguments as to the effect of the Trustee's conduct unpersuasive; for to accept them I would have to conclude that a Bankruptcy Trustee is required to take physical possession of property of the bankruptcy estate or take other positive actions to assert control over such property and make mortgage payments, or the like, in order to preserve the bankruptcy estate's rights therein. The Bankruptcy Code places no such burdens on a Trustee, and does not expose the estate to that risk.

Debtors argue further that by my order of August 26, 1988, they were deprived of the right to demand that the estate make the payments due the holder of trust deeds on the subject property, real property tax payments and costs of improvements. I find that argument disingenuous. Nothing prevented the Debtors from making such demands on the Trustee prior to the closing of the case, except perhaps, their desire to remain in the residence. My order of August 26, 1988, closing the case did not alter or diminish the Debtors' options to recover the residence from the bankruptcy estate, or to request that the Trustee make the aforesaid payments. The debtors could have filed their motion for abandonment, pursuant to § 554(b), at any time. We will never know the results which might have obtained if such a motion had been brought by the Debtors early in the case when mortgage payments and, apparently, improvements to the property were needed. The Debtors may still seek an order for reimbursement

of monies they expended on mortgage payments, taxes and improvements.

Debtors have also asserted that payments they made on the mortgage and taxes and to improve the subject property entitle them to the resulting appreciation of the equity in the subject property since the commencement of the bankruptcy case. I have considered whether the Debtors' claim to post-petition appreciation is valid in the context of determining whether they had a valuable property interest in the subject real property at the time I ordered this bankruptcy case closed without notice to the Debtors. The Debtors cite *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Penn.1981), in support of their theory, and quote from that opinion the following:

> Appreciation of property or an increase in equity ownership by the reduction of an outstanding mortgage are examples of after acquired property which are attributable to the debtor's post-bankruptcy efforts.

That court then concluded that such "after acquired property" is not subject to the claims of a debtor's creditors. I respectfully disagree with those conclusions.

I have concluded that (a) the Debtors are not entitled to post-petition appreciation of the subject property; (b) post-petition payments by the Debtors did not result in the acquisition of a protectable property right in the subject real property.

As to the question of entitlement to post-petition appreciation, I agree with the opinion expressed by Judge Fox in the case of *In re Paolella*, 85 B.R. 974 (Bankr.E.D. Penn.1988), when he reasoned that because 11 U.S.C. § 541(a)(6) provides that property of the estate includes "proceeds, product, offspring, rents and profits of or from property of the estate," appreciation of the value of property of the estate enures to the bankruptcy estate, not the Debtor.

As to the question of the effect of the Debtors post-petition payments, I find no justification for the proposition that such payments by a Debtor result in the acquisition of an interest in property of a bankruptcy estate. Neither the *Tanner* court nor the Debtors refer me to any statutory or other authority to support that proposition, and my analysis of the law, as noted above, leads me to conclude that Debtors may not so easily acquire an interest in property of a bankruptcy estate.

## CONCLUSION

I find that my order denying revesting of title in the Debtors was not in error. The Debtors were not deprived of property without due process under the facts presented in this instance, for the Debtors had no constitutionally protected right to revestment of title to the subject property upon the closing of this case. Furthermore, neither the evidence nor the law supports the conclusion that I should now deem the subject property abandoned to the Debtors.

As to the other relief sought by the Debtors in their motion for reconsideration, there is insufficient proof before me in the moving papers to support a ruling in the Debtors' favor, so any such additional relief is denied without prejudice.

By this ruling, I do not mean to hold or imply that trustees should not give notice to debtors of an application to close a bankruptcy case leaving an unadministered asset in the estate. I prefer that such notice be given, and in that regard, I note that proposed changes to Rule 5009 include a provision for notice to debtors, and others, of motions to close bankruptcy cases pending under Chapters 7, 12 and 13. However, the determination of the law in this instance does not turn on my preferences. Quite simply, the law does not support the Debtors' position in any respect, and I find no deprivation of property without due process. I also find no right to revestment of the subject property (or its sale proceeds) in the Debtors.

This Memorandum of Decision constitutes my Findings and Conclusions and an order will issue accordingly.

## ORDER GRANTING MOTION FOR RECONSIDERATION AND RECONFIRMING PRIOR ORDER

In accordance with my Memorandum of Decision this date,

IT IS HEREBY ORDERED that the Debtors' motion for reconsideration of my order of June 27, 1989 is granted, however, having reconsidered said order,

IT IS FURTHER ORDERED that said order shall *not* be vacated or amended in any way, and said order remains in full force and effect.