**In re Charles F. SHULTZ, Sr., and Chrystal L. Shultz, Debtors.**

**No. 12–23409 jpk.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Signed March 28, 2014.

Frederick L. Carpenter, Sheila A. Ramacci, Highland, IN, for Trustee.

Daniel L. Freeland, Highland, IN, Trustee.

Miguel F. Martinez, Jason R. Moseley, The Law Offices of Jason R. Moseley, Merrillville, IN, for Debtors.

## MEMORANDUM OF DECISION AND ORDER IN CONTESTED MATTER CONCERNING REOPENING OF THE CHAPTER 7 CASE IN RELATION TO ADMINISTRATION OF A TAX REFUND

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

The Chapter 7 case of Charles F. Shultz, Sr., and Chrystal L. Shultz ("collectively: Shultz") began and was initially closed innocuously enough. The case was initiated by a Voluntary Petition filed on September 6, 2012. Daniel L. Freeland was appointed the interim Trustee at the inception of the case, and after conducting the Section 341 meeting, on October 3, 2012, he became the permanent Chapter 7 Trustee ("Trustee"). On November 26, 2012, the Trustee filed a Report of No Distribution, and on January 16, 2013, the Court entered an Order Approving Trustee's Report of No Distribution and Closing Estate. At that time, the case appeared to be a routine "no asset" case in which the debtors received their discharge and went on their happy way to their post-bankruptcy life.

But then, the case became something other than routine. Among their post-bankruptcy life activities, Shultz filed their 2012 Form 1040–A federal income tax return. In that return the debtors claimed an earned income credit of $883.00 and a general income tax refund of $7,768.00. The return was apparently routinely processed by the Internal Revenue Service, and the earned income credit and general income tax refund claimed by Shultz was allowed as a tax refund to Schultz. However, the tax refund was not transmitted to Shultz, but rather was sent to the Trustee pursuant to an Application and Authorization for Internal Revenue Service Refund Turnover to Chapter 7 Bankruptcy Trustee Pursuant to 11 U.S.C. § 542 which the Trustee had filed with the Internal Revenue Service on October 3, 2012. Upon receiving the tax refund, on April 25, 2013, the Trustee filed the Record No. 26 Application to Reopen Estate with Deferred Fee, seeking to reopen the estate to administer the portion of the 2012 income tax refund which the Trustee asserted was available for distribution to creditors in the Chapter 7 case. On May 22, 2013, Shultz filed their Record No. 40 objection to the Trustee's Record No. 26 motion. In that objection, Shultz asserted that by operation of applicable law the closing of the Chapter 7 case resulted in abandonment to them of the entirety of the 2012 federal income tax refund, including the portion of the general income tax refund which would have been available for administration in the Chapter 7 case had the case not been closed. The Trustee meanwhile pro-rated the general tax refund, and dealt with the

earned income credit: of the $7,768.00 received by the Trustee from the Internal Revenue Service, the Trustee retained $5,094.61, and returned $2,673.39 to Shultz, of which $1,790.39 was their share of the pro-rated general income tax refund and $883.00 was the earned income credit.[1] The Trustee contends that applicable law and rules must result in a determination that the portion of the tax refund which he retained for administration was not abandoned to the debtors and is subject to administration in the reopened case.

On April 26, 2013, as record entry No. 27, the court entered its routine order which reopened the Chapter 7 case in response to the Trustee's Record No. 26 motion. Thus, at the time the Record No. 40 objection to reopening was filed by Shultz, the case had already been reopened. By Record No. 42, the court scheduled a hearing with respect to the substantive issues raised by Shultz in their objection, and as a result of that hearing an order was entered as Record No. 49, which states:

> Docket Entry: Hearing held on 6/21/13 RE: (related document(s)40 Objection filed by Charles F Shultz and Chrystal L Shultz to 26 Motion to Reopen Case filed by Daniel L. Freeland. APPEARANCES: Atty. Martinez on behalf of Debtors and Atty. Freeland on behalf of Trustee. It is ORDERED: (1) The debtors and the trustee shall file a stipulation of facts by July 25, 2013—the stipulation shall include the parties stipulation as to all issues submitted to the court for final determination of the matter and all documents necessary to complete the factual stipulation. The stipu-

lation shall constitute the ENTIRE RECORD upon which the court will determine the matter. (2) Each party shall submit a legal memorandum by September 30, 2013, there will be no replies. (pg) (Entered: 06/27/2013)

As will be addressed below, reopening of the case is an administrative matter which has no substantive significance, and the contested matter in this case does not involve whether or not the case should have been reopened, but rather concerns the substantive issues which relate to whether or not the portion of the 2012 federal income tax refund sought to be retained by the Trustee is subject to administration in this case or must be returned to Shultz because it was abandoned by the initial closing of the case. The Stipulated Statement of Facts provided for by the Record No. 49 order was filed on July 25, 2013, and the respective legal memoranda of the parties were filed in accordance with that docket entry.

The court has full constitutional and statutory authority and jurisdiction to enter a final judgment with respect to the contested matter.

## I. ISSUE ADDRESSED

Under the circumstances of Case No. 12–23409, did the closing of the Chapter 7 case by the Record No. 23 order entered on January 16, 2013, result in irrevocable abandonment of the entirety of the 2012 federal income tax refund to Shultz, or conversely may the allocable portion of that federal income tax refund retained by the Trustee still be administered by the Trustee despite the initial case closing.

---

1. The proration was effected pursuant to the law which this court has previously determined is applicable to determination of the bankruptcy estate's and the debtor's allocable interests in a federal income tax refund for the tax period which includes the date of the filing of the bankruptcy case. There is no issue in this case as to the Trustee's calculation of the pro-rated refund which the Trustee asserts is available for administration in the case.

## II. *FACTUAL RECORD*

The entirety of the facts stated in the Record No. 51 Stipulated Statement of Facts is the following:

1. On September 6, 2012, Debtors, Charles and Chrystal Shultz filed, a voluntary joint Chapter 7 petition in the United States Bankruptcy Court, Northern District of Indiana, Hammond Division. The Chapter 7 Petition, Schedules, and Statement of Financial Affairs are attached hereto as Exhibit "A". [not attached to this memorandum].

2. At that time Daniel L. Freeland was appointed the interim Trustee.

3. On October 3, 2012 the required 11 U.S.C. § 341 meeting was held, at which time by operation of law, Daniel L. Freeland became the permanent Trustee.

4. At the § 341 meeting the Debtors provided their tax returns for the 2010 and 2011 tax years. Debtors did not provide any information in regards to the 2012 tax year, as the taxes had yet to be filed.

5. On October 3, 2012 the · Trustee, based upon the information attained at the § 341 meeting, filed an Application and Authorization for Internal Revenue Service Refund Turnover to Chapter 7 Bankruptcy Trustee Pursuant to 11 U.S.C. § 542 which is attached hereto as Exhibit "B". [not attached to this memorandum].

6. That the amount of the refund was unknown on November 26,2012, when the Trustee filed a Report of No Distribution with the Court. The Trustee maintains that it was not his intention to abandon the tax refund by doing so.

7. The Trustee maintains that the Report of No Distribution was filed, since the tax return was not ascertainable and the Trustee did not want to hold up the Debtor's discharge. The Debtor can neither confirm nor deny the Trustee's motives or intent.

8. On January 16, 2013, the Court entered an Order Approving Trustee's Report of No Distribution and Closing Estate.

9. On February 15, 2013, Debtors, through the use of the tax preparer, HRB Tax Group Inc. in Lake Station, Indiana prepared and filed their 2012 tax return.

10. The Debtors filed an Internal Revenue Service Form 1040A. Copies of the 2012 tax return are attached hereto as Exhibit "C". [not attached to this memorandum].

11. The Debtors listed an Earned Income Credit amount of $883.00 on their 2012 tax return.

12. The amount of the refund listed on the 2012 Form 1040A was $7,768.00 which was the amount that was refunded by the IRS.

13. In the Debtors' Chapter 7 filing they included on Schedule B–Personal Property and Schedule C–Property Claimed as Exempt an asset described as "Earned Income Credit Portion of Current Year's Income Tax Refund."

14. The "Earned Income Credit Portion of Current Year's Income Tax Refund" is the only item that references an exclusion of any tax credit/refund.

15. A tax refund is an asset of a Bankruptcy Estate that is subject to administration.

16. Upon the Trustee receiving Debtor's 2012 tax returns and the tax refund, the Trustee, on April 25, 2013, filed an Application to Reopen Estate with Deferred Fee ("Motion").

17. Trustee filed the application because the tax refund amount was now known and could be administered.

18. The Trustee pro-rated the tax refund to the bankruptcy estate in the amount of $5094.61. Trustee received the $7,768.00 from the Internal Revenue Service and maintains $5,094.61 of which is Property of the Bankruptcy Estate in order to efficiently administer the tax refund. The Trustee returned to the Debtor's $2,673.39 of which $1,790.39 was Post–Petition Earnings and $883.00 was Earned Income Credit Exemption. Copies of the calculations are attached hereto as Exhibit "D". [not attached to this memorandum].

19. The motion referred to the refund as a substantial asset that warranted reopening the estate.

20. On April 26, 2013 the Court granted the Trustee's Motion.

21. On May 22, 2013 the Debtors filed an objection to the Application to Re-open Estate with Deferred Fee on grounds that the refund was abandoned by the Trustee under 11 U.S.C. § 554(c).

As stated in the Record No. 49 order, the foregoing facts constitute the entire evidentiary/factual record upon which the contested matter will be determined. The legal memorandum filed by Shultz includes recitations of communications and transactions which are stated to have occurred between the debtors and their attorney: none of that material constitutes any part of the factual record—just as no extraneous other material in the memorandum submitted by Shultz or in the memorandum submitted by the Trustee will be considered as part of the factual record.

III. *ANALYSIS*

The principal statutory law applicable to determination of the contested matter is that stated in 11 U.S.C. § 554(c) and (d), which state:

§ 554. Abandonment of property of the estate

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Subparagraphs (a) and (b) of section 554 have no applicability to the circumstances of this case. Additionally, because the Trustee did not undertake the abandonment procedure provided for by 11 U.S.C. § 554(a), the provisions of N.D.Ind.L.B.R. B–6007–1(a) are also of no applicability in this case. However, N.D.Ind.L.B.R. B–6007–1(b) is pertinent, stating as it does that "A no asset report is not a notice of abandonment." Being the initiator of this particular provision, the author of this memorandum states and determines that this provision was promulgated to make clear that "constructive abandonment" under 11 U.S.C. § 554(c) occurs only when the case is closed (if then), and that the filing of particularly a "no asset" report has no effect to abandon any property from a bankruptcy estate. That is as far as Rule B–6007–1(b) goes, and that is all that it provides for. Putting aside arguments by Shultz and by the Trustee which the court deems to be either immaterial or superfluous, the result in this case depends upon interpretation and application of 11 U.S.C. § 554(c) and (d).

■ Let's first address something that is absolutely clear. Had the case not been closed but rather remained open until the Trustee received the 2012 federal income tax refund, there is no question that the bankruptcy estate's pro-rated share of that refund would have been subject to admin-

istration for the benefit of the debtors' creditors. Contentions in the memorandum submitted by Shultz seem to assert that it is grossly unfair—and perhaps even illegal—for their creditors to receive the benefit of the portion of the tax refund instead of having the entirety of the refund returned to them. *Au contraire, mon ami.* The debtors had *no* reasonable expectation at the inception of their case that the portion of the federal income tax refund retained by the Trustee would be available to them in any way and would not be administered to pay their debts. The court will decide the substantive issues based upon the law and not upon supposed "equities", either in favor of Shultz or of the Trustee.

Shultz advances the argument that upon closing of the case, the Trustee's failure to withdraw the tax refund "intercept" application he had submitted to the Internal Revenue Service was impermissible and constituted a violation of 18 U.S.C. § 641, a federal criminal statute which deals with embezzlement, theft, or knowing conversion of property of the United States of America. This court views it as **entirely inappropriate** for a litigant in a civil case to assert that another litigant has violated federal or state criminal law in a circumstance in which there is *no presently existing, publically disclosed* proceeding involving a criminal process. Moreover, *United States of America v. McRee,* 984 F.2d 1144 (11th Cir.1993) determined that an allowed federal income tax refund is not property of the United States within the provisions of 18 U.S.C. § 641. The court expects never again to read an argument of the nature of that advanced in the Shultz memorandum with respect to a criminal statute.

Moving along, a portion (a term used advisedly by the court) of the Shultz memorandum seeks to address issues con-

cerning reopening of the Chapter 7 case as substantive legal issues which bear on the ultimate determination which must be made by the court concerning abandonment of the retained portion of the 2012 federal income tax refund. As stated in *In re Chalasani,* 92 F.3d 1300, 1307 (2nd Cir. 1996):

> Bankruptcy Rule (Bankr.R.) 5010 provides, in relevant part, that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." In turn, 11 U.S.C. § 350(b) simply states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." The Code does not define "cause."

Reopening of the case is simply a ministerial act, the origin of which in part derives from the fact that prior to electronic records, all court records were exclusively paper which were shipped to a federal records center for retention for a certain period of time when a case was closed. Reopening of the case was part of the mechanism for requesting retrieval of paper records from the records center. As stated in *In re Germaine,* 152 B.R. 619, 624 (9th Cir. BAP 1993):

> The reopening of a case is merely a ministerial or mechanical act which allows the court file to be retrieved from the stacks of closed cases to enable the court to receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the case. *In re David,* 106 B.R. 126, 128–29 (Bankr.E.D.Mich.1989); see *In re Daniels,* 34 B.R. 782 (9th Cir. BAP 1983).

Properly understood, in the United States Bankruptcy Court for the Northern District of Indiana, reopening of a case has nothing to do with substantive issues

which the reopening party seeks to present to the court, but merely provides an open case as a platform upon which those issues will be otherwise be addressed. The arguments made by Shultz concerning reopening of the case are immaterial.

Equally immaterial is the argument advanced by the Trustee in subsection B on pages 13 and 14 of his memorandum. N.D.Ind.L.B.R. B–6007–1(b) was not intended to be a rule-promulgated order within the provisions of 11 U.S.C. § 554(c). As the court understands the Trustee's argument, the Trustee asserts that by stating that a no asset report is not a notice of abandonment, the court somehow institutionally decreed that absent abandonment pursuant to 11 U.S.C. § 554(a) by the Trustee, the closing of the case does not abandon property from the bankruptcy estate. As stated previously, that is simply not what this rule provides for. In the instant case, prior to the closing of Case No. 12–23409, there was no order of the court—either expressly or by implication somehow from a local rule—which in any manner affected the operation of 11 U.S.C. § 554(c) or (d).

Rather than address each of the parties' remaining substantive contentions, the court will cut to the chase. It's a short run.

First, in order for property to be constructively abandoned from a bankruptcy estate upon closing of the case, 11 U.S.C. § 554(c) requires that the property be "scheduled under section 521(a)(1)." "Scheduled" means exactly what it says— the specific property must be specifically designated in Schedules filed by the Debtor in the case. Schedule B as filed by Shultz in this case states the federal tax-related asset to be "Earned Income Credit Portion of Current Year's Income Tax Refund." Thus, only the earned income credit portion of the 2012 remittance by the Internal Revenue Service to Shultz was scheduled. In their memorandum, Shultz advances an interesting, but oxymoronic, metaphor in an effort to address the issue of what was scheduled, involving a wine bottle and its "valuable contents". Whatever that metaphoric effort seeks to express, in more accurate terms the wine bottle is the vessel which holds the entirety of an annual tax refund. Its contents can be comprised of only an earned income credit; of only a refund of overpayment of withheld income tax; of other credits or refunds provided for by the Internal Revenue Code; or of a combination of any or all of the foregoing. The contents of the bottle in this case is comprised of both an earned income credit and a general income tax refund. Only the earned income credit portion of the bottle's contents was scheduled, so what Shultz scheduled was a mostly empty bottle.

Shultz spends a great deal of their memorandum discussing the Trustee's implied knowledge of the potential existence of a general income tax refund in 2012, given the tax refund history which was indicated in prior income tax year returns provided to the Trustee. The court does not agree. The court agrees with the following statement in *In re McCoy*, 139 B.R. 430, 431–432 (Bkrtcy.S.D.Ohio 1991):

> The language of subsection (c) deems abandoned to the debtor any scheduled asset of the estate that remains unadministered at the close of the case. Any *432 asset concealed from the trustee or not scheduled by the debtor, however, will not be deemed to have been abandoned. *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981). The word "scheduled" in § 554(c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities. *In re Fossey,* 119 B.R. 268 (D.Utah 1990).

The circumstances in the present case suggest that the tax refund was not deemed abandoned under § 554(c) upon the closing of the case. The debtor failed to include the tax refund in her schedule of assets. Even more significant in this regard is the fact that she did not include the tax refund when she amended her schedules. Even though she clearly brought the asset to the Trustee's attention, case law consistently holds that assets must be explicitly identified in the schedule before a deemed abandonment can occur. *See, In re Harris,* 32 B.R. 125 (Bankr.S.D.Fla. 1983); *In re Bryson,* 53 B.R. 3 (Bankr. M.D.Tenn.1985); *In re Schmid,* 54 B.R. 78 (Bankr.D.Or.1985). Since the potential tax refund was not listed in the debtor's schedules, no deemed abandonment of that refund has occurred. The refund remains as an unadministered asset which is property of the estate under 11 U.S.C. § 554(d). *In re Medley,* 29 B.R. 84 (Bankr.M.D.Tenn.1983). Accordingly, this case will be opened to allow the Trustee to administer the tax refund.

It is uncontested that the Trustee knew of the tax refund before the case was closed. The debtor argues that such knowledge relieves her from having to meet the scheduling requirement. The language of § 554(c) is plain and unambiguous, however, and there is no support for the thesis that knowledge changes the express language of the statute. Only assets that are actually scheduled can be deemed abandoned under 11 U.S.C. § 554(c). *Medley,* 29 B.R. at 84.

The scheduling requirement of § 554(c) furthers the policy of giving a trustee in bankruptcy means to administer the estate as quickly as possible. A readily available listing of assets prevents the trustee from having to do a rigorous search of the debtor's records and make inferences from answers to questions. *Medley,* 29 B.R. at 84. It also makes public all assets available for distribution to creditors.

The court also agrees with the following, stated in *In re Davis,* 158 B.R. 1000, 1002 (Bkrtcy.N.D.Ind.1993):

The cause of action against defendants arose from an alleged pre-petition violation of the FDCPA. Property of the estate encompasses "all legal and equitable interests of the debtor in property as of the commencement of the case", 11 U.S.C. § 541(a)(1) (Callaghan 1992–93), which includes causes of action. *In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1225 (8th Cir.), cert. denied, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). See *Matter of Smith,* 640 F.2d 888 (7th Cir.1981). It is a debtor's duty to file a schedule of assets existing at the time the petition for relief is filed. 11 U.S.C. § 521(1). Even though Debtors failed to list the cause of action as an asset, it nevertheless became property of the estate pursuant to § 541(a)(1). After notice and a hearing, property may be abandoned from the estate by the trustee or upon request of a party in interest. 11 U.S.C. §§ 554(a) and (b). However, in this case the Debtors' cause of action was never abandoned from the estate under either §§ 554(a) or (b).

Any scheduled property not administered at the time of the closing of the case is abandoned to the debtor and deemed administered. 11 U.S.C. § 554(c). This section explicitly provides that it applies only to property that has been scheduled, and it is not enough that the trustee learns of property through other means. *Vreugdenhill v. Navistar Intern. Transp. Corp.,* 950 F.2d 524 (8th Cir.1991). Since Debtors' cause of action was not sched-

uled, § 554(c) is not applicable and the cause of action was not deemed administered and abandoned.

Property of the estate that has not been expressly abandoned or administered by the trustee at the time the case is closed remains property of the estate. 11 U.S.C. § 554(d). *Stanley v. Sherwin–Williams Co.*, 156 B.R. 25, 26 (W.D.Va. 1993); *Pace v. Battley (In re Pace)*, 146 B.R. 562, 566 (9th Cir. BAP 1992). Consequently, the cause of action was initially property of the estate, and remained property of the estate even though the case was closed.

Additionally, in *Vreugdenhill v. Navistar International Transportation Corporation*, 950 F.2d 524, 526 (8th Cir.1991), the court stated:

Vreugdenhill argues that because he never concealed the claim from the trustee and because he had previously raised the issue in his motion for an Order to Show Cause, the claim was "necessarily scheduled." Because the trustee did not pursue the claim, Vreugdenhill contends, the claim was unadministered at the close of the case and passed to the debtor by operation of law. This court finds, however, that in order for property to be abandoned by operation of law pursuant to section 554(c), the debtor must formally schedule the property before the close of the case. It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1). See 4 *Collier on Bankruptcy*, ¶ 554.02[5] (1982). It is clear that Vreugdenhill never scheduled the potential claim against IHC for failure to accept returned parts. Therefore, the claim against IHC could not be abandoned by operation of law.

Because Shultz never scheduled their general 2012 income tax refund, by operation of 11 U.S.C. § 554(c) the bankruptcy estate's pro-rata share of that refund was not abandoned when the case was closed.

There are additional reasons under 11 U.S.C. § 554(c) as to why the estate's pro-rata share of the 2012 refund was not abandoned when the case was closed.

■ First, the Trustee did otherwise administer Shultz' interest in the 2012 federal income tax refund by filing the application designated in paragraph 5 of the Stipulated Statement of Facts. That notice effectively began the process of administration of the 2012 refund when and if the Internal Revenue Service allowed it, and as a result Shultz' potential interest in the refund was "otherwise administered" at the time the case was closed, and it was not abandoned. Because the refund was not abandoned under subparagraphs (a), (b) and (c) of 11 U.S.C. § 554, it remained property of the estate under 11 U.S.C. § 554(d).

■ Additionally, to some extent 11 U.S.C. § 554(c) depends not only upon precise scheduling of an asset in general terms, but also upon the Trustee's knowledge of the value of the asset as property of the bankruptcy estate. As stated in *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 85–86 (D.D.C.1991):

At the outset, the court notes that the party seeking to demonstrate abandonment bears the burden of persuasion. *Barletta v. Tedeschi*, 121 B.R. 669, 672 (Bankr.S.D.N.Y.[N.D.N.Y.]1990), *citing Hanover Insurance Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3rd Cir.1974). With this in mind, the plaintiff argues that he need only show that the trustee was notified of the pending lawsuit, and that this lawsuit was not administered at the close of the bankruptcy case in order to show that it was abandoned. The plaintiff's position however is contrary to

other provisions in the Bankruptcy Code delineating the duties and responsibilities of the trustee and is not consistent with the burden of proof imposed upon the plaintiff in showing implied abandonment.

In bankruptcy proceedings, the trustee's position is like that of a fiduciary to both the debtor and creditors. Under the Code, he must investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1) and (4). He has the duty to maximize the value of the estate, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985), and in so doing is "bound to be vigilant and attentive in advancing [the estate's] interests." *Matter of Baird*, 112 F. 960 (D.C.Cir.[E.D.Pa.]1902). "In short, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." 4 Collier, Bankruptcy ¶ 704.01 (15th ed.).

Abandonment, when properly affected, is not inconsistent with the trustee's duty to maximize the estate for the benefit of the creditors. On the contrary, abandonment provisions are designed to allow the trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of the financial burden of administering inconsequential assets that would cost more than they are worth to the estate. *See* 11 U.S.C. § 554(a) and (b); (footnote omitted); *In re Moore*, 110 B.R. 924 (Bankr.C.D.Calif.1990). However, at the risk of belaboring the obvious, the trustee may not abandon those assets that would certainly benefit the estate and satisfy the debts owing to the creditors. Likewise, a trustee may not disregard or overlook substantial assets that could potentially contribute to the es-

tate. And more specific to the issue here, a trustee may not simply ignore ongoing discussions to settle pending litigation filed by the bankrupt debtor. *Cf. In re Moore*, 110 B.R. at 928.

Therefore, in keeping with the fiduciary duty imposed upon the trustee, it is clear then that the mere fact the trustee was notified of the pending lawsuit, but yet failed to administer it, will not necessarily mandate a finding of implied abandonment.FN15 To hold otherwise would as a practical matter absolve a trustee of his statutory duties to the creditors and the estate, and essentially read the "fail-safe" provision of § 554(d) out of the Bankruptcy Code. Instead, case law and other provisions of the Bankruptcy Code suggest that notification of pending claims is not sufficient to establish implied abandonment. Rather, it must also be shown that the abandonment of a claim is the "result of an intelligent decision" by the trustee—and such an "intelligent decision" can be made only on the basis of all reasonably available information. *In re Schmid*, 54 B.R. 78, 80 (Bankr.D.Or.1985); *cf. In re Atkinson*, 62 B.R. 678, 680 (Bankr. D.Nev.1986) (Trustee reviewed court records with counsel and thus made an informed decision not to pursue claims). Accordingly, in order to prove that an implied abandonment was indeed effected, the plaintiff must show at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties to the estate and to the creditors as to the value of estate property before impliedly abandoning it through the filing of a "no asset" report.

In this case, the Trustee could not possibly have known of the value of the 2012 general income tax refund at the time the case was closed, and could not have abandoned it consistently with his duties as trustee.

In this context, the court cites with approval the following, stated in *In re De-Groot*, 484 B.R. 311, 320–322 (6th Cir. BAP 2012):

> The second issue about which the Trustee was correct was that technical abandonment of an asset pursuant to § 554(c) ordinarily cannot occur if the Debtor failed to list the asset on his schedules. *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476, 478 (6th Cir. BAP 1998); *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr.N.D.Ohio 2005) ("[P]roperty not properly scheduled remains property of the estate in perpetuity."). This is true even if the trustee had knowledge of the asset. *Vreugdenhill v. Navistar Int'l Transp. Co.*, 950 F.2d 524, 526 (8th Cir. 1991); *Cundiff*, 227 B.R. at 479. A debtor has an affirmative duty under 11 U.S.C. § 521(a)(1) to list all his assets and liabilities on his bankruptcy schedules. 11 U.S.C. § 521(a)(1) (2004). "When a debtor fails to list an asset on her schedules, it remains unadministered because the trustee has not been placed on notice of the existence of the asset." *Magana–Lopez v. JPMorgan Chase Bank, N.A. (In re Magana–Lopez)*, Bankr.No. 6:10–bk–50387–SC, Adv. No. 6:11–ap–01170–SC, 2012 WL 1355553, at *3 (Bankr.C.D.Cal. Apr. 18, 2012).
>
> Although the Trustee is correct that knowledge of an asset typically will not defeat abandonment under § 554(c), he overlooks the opening phrase in § 554(c) and (d): "Unless the court orders otherwise." "[T]he prefatory language of § 554(c), 'unless the court orders otherwise,' indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise." *[In re] DeVore*, 223 B.R. [193] at 198 [ (9th Cir.1998) ] (emphasis added); *In re Shelton*, 201 B.R. 147, 155 (Bankr.

E.D.Va.1996) ("[A] plain reading of § 554(c) reveals that Courts have the discretion to modify or revise any 'technical abandonment' simply by ordering otherwise."). Because the same phrase appears in subsection (d) of § 554, the court's discretion to affect or prevent abandonment of estate property would be the same. "If the claim is not abandoned [under § 554(a), (b) or (c) ], and unless the bankruptcy court orders otherwise, the claim 'remains property of the estate.' " *Charboneau v. Jordan*, No. 07–12929–BC, 2010 WL 148664, at *2 (E.D.Mich. Jan. 12, 2010) (emphasis added) (quoting 11 U.S.C. § 554(d)); *In re Prospero*, 107 B.R. 732, 734–35 (Bankr. C.D.Cal.1989).

The phrase "unless the court orders otherwise" appears throughout the Bankruptcy Code. *See, e.g.,* 11 U.S.C. §§ 349(a) and (b), 363(c)(1), 521(a)(1)(B), 1108, and 1326(a)(1). In interpreting those statutes, courts have held that the phrase "unless the court orders otherwise" grants a bankruptcy court discretion. *In re Acosta–Rivera*, 557 F.3d 8 (1st Cir.2009) ("unless the court orders otherwise" language of § 524(a)(1)(B) gives a bankruptcy court discretion to enter an order excusing nondisclosure of financial information after the time for filing the required information has expired); *In re Amir*, 436 B.R. 1, 22–25 (6th Cir. BAP 2010) (same); *In re Singer*, 368 B.R. 435, 444 (Bankr.E.D.Pa. 2007) (concluding that the "unless the court orders otherwise" language in § 1326(a)(1) allows a bankruptcy court discretion to excuse adequate protection payments "in appropriate circumstances"); *G & J Invs. v. Zell (In re Zell)*, 108 B.R. 615, 622 (Bankr.S.D.Ohio 1989) (determining that the "unless the court ... orders otherwise" language in § 1108 "empowers a debtor-in-posses-

sion with far reaching discretion to operate its business [under § 1107], unless the Court orders otherwise").

The body of case law interpreting a court's power to "order otherwise" under § 554 is almost nonexistent. With the exception of the *DeVore* case, the few cases to discuss it do so in the context of whether a technical abandonment under § 554(c) may be revoked.FN5 *Spear v. Schafler (In re Schafler)*, 263 B.R. 296 (N.D.Cal.2001); *Neville v. Harris*, 192 B.R. 825 (D.N.J. 1996); *In re Johnson*, 361 B.R. 903 (Bankr.D.Mont.2007); *In re Gonzalez*, 302 B.R. 687 (Bankr.C.D.Cal.2003). That is a wholly different issue than the one in the case currently on appeal. Here, the bankruptcy court concluded that the Receivable had not been abandoned under § 554(c), but that it could deem the Receivable abandoned to Joy DeGroot pursuant to the "unless the court orders otherwise" language found within § 554(c) and (d). As stated supra, the court was not revoking any type of abandonment since the Receivable remained property of the estate when the case was closed pursuant to § 554(d).

> *FN5.* In *DeVore*, the 9th Circuit BAP recognized that "the prefatory language of § 554(c) 'unless the court orders otherwise,' indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise." *Id.* at 198. The *DeVore* panel also recognized that other courts had concluded that technical abandonments could be revoked in "appropriate circumstances." Ultimately, however, the *DeVore* panel concluded that because the order reopening the case and withdrawing the no-asset report did not specifically revoke the technical abandonment, the issue of whether a court can revoke a technical abandonment was not before it.

In its opinion, the bankruptcy court determined that appropriate circumstances existed in this case which warranted invoking the court's discretion to order otherwise under § 554(c) and (d). Debtor did not list the Receivable on his bankruptcy schedules although he did disclose its existence at his § 341 meeting of creditors and provided an explanation as to why he did not list it on his bankruptcy schedules. The Trustee failed to properly administer the asset in violation of his statutory duties to "collect and reduce to money the property of the estate." [*In re*] *DeGroot*, 460 B.R. [159] at 170 [ (Bankr.W.D.Mich. 2011) ] (citing 11 U.S.C. § 704(a)(1)). There was no question that the Trustee had knowledge of the Receivable. He filed the notice of assignment of lien in the Ottawa County Recorder's Office and thereby exerted control over the property and the right to payment of any money that came due under the Receivable. He also filed a notice of dividends to creditors indicating there might be assets available for distribution. It is true that the Receivable was not listed on Debtor's schedules; however, the Trustee's actions in filing the notice of lien and the notice of possible dividends indicates that the Trustee was proceeding as if it were an asset of the estate. Although Debtor's failure to list the Receivable on his schedules may technically mean the property remained property of the estate when the case was closed in May 2008, the Trustee's partial administration of the Receivable, followed by his filing a no asset report and certifying that he had performed the duties required under § 704, weigh heavily in allowing the bankruptcy court to now "order otherwise." *FN6*

FN6. "[I]f the debtor fails to list a claim as an asset, the trustee cannot abandon the claim because he or she will have had no opportunity to determine whether it will benefit the estate." *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr. N.D.Ohio 2005) (citation omitted) (internal quotation marks omitted). In the case currently on appeal, the Trustee had an opportunity to determine that the Receivable would benefit the estate.

In *In re Shelton*, 201 B.R. 147, 155, 156 (Bkrtcy.E.D.Va.1996), the court stated the following:

The Goochland County Property was properly scheduled by Mr. Shelton, and Lubman apparently abandoned that property to the debtor under § 554(c) when Mr. Shelton's case was closed. Mr. Shelton relies upon *In re Sutton*, 10 B.R. 737, 740 (Bankr.E.D.Va.1981) (Bostetter, J.), for the proposition that abandonment of property by the trustee is irrevocable, and therefore argues that the Goochland County Property cannot now be "unabandoned" by reopening Mr. Shelton's bankruptcy case.

The Court disagrees. While there appears little doubt that Lubman technically abandoned the Goochland County Property under § 554(c) when he failed to administer that asset prior to the closure of Mr. Shelton's case, *see Stanley v. Sherwin Williams Co. (In re Stanley)*, 156 B.R. 25, 26 (W.D.Va.1993), the Court nonetheless concludes that upon reopening, the Goochland County Property will be available to the trustee for administration.

First, a plain reading of § 554(c) reveals that Courts have the discretion to modify or revise any "technical abandonment" simply by ordering otherwise. 11 U.S.C. § 554(c) (West 1995). In *Neville v. Harris (In re Neville)*, the District Court upheld a Bankruptcy Court decision to reopen a case in order to administer assets which were technically abandoned under § 554(c). 192 B.R. 825 (D.N.J.1996). In doing so, the *Neville* Court adopted an interpretation of § 554(c)—specifically the "unless the Court orders otherwise" language of § 554(c)—which would permit a Court to reopen a bankruptcy case and undo a technical abandonment under appropriate circumstances. *Id.* at 832. *The Neville Court found that § 554(c) did not necessarily restrict Courts to the time period prior to case closure with respect to the Court's ability to limit or modify any technical abandonment by the trustee. Id. This Court agrees, and concludes that it is possible, under appropriate circumstances, for the Court to modify or limit the extent of property that is technically abandoned under § 554(c), even after a debtor's case is closed.*

Other Courts have interpreted § 554(c) to include an implied requirement that the trustee must have made "an intelligent decision" with respect to the abandonment, and that § 554(c) should not be interpreted "to inadvertently deny creditors the benefit of a substantial asset." *In re Schmid*, 54 B.R. 78, 80 (Bankr.D.Ore.1985). *See also, In re Lintz West Side Lumber, Inc.*, 655 F.2d 786 (7th Cir.1981) (holding that the Court could revoke an express abandonment if that abandonment was the result of an inadvertent error and the parties were not unduly prejudiced by the revocation); *Mele v. First Colony Life Ins. Co., (In re Mele)*, 127 B.R. 82, 85–86 (D.D.C.1991) (holding that to prove abandonment under § 554(c), it must be shown "at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties to the

estate and to the creditors as to the value of the property...." (emphasis in original)); *Sutton*, 10 B.R. at 740–41 (recognizing at least three exceptions to otherwise irrevocable abandonment, to include unintentional or inadvertent abandonment).

While the Court has no evidence with respect to Lubman's decision making process, the Court nonetheless is concerned that Lubman may not have been afforded the ability to make an informed decision with respect to administering the Goochland County Property due to the state of the information contained within Mr. Shelton's schedules. Mr. Shelton's schedules did not accurately reflect the extent of the Sheltons' joint obligations, and may not have afforded Lubman with the ability to make a decision in the best interests of the estate or the relevant creditors. (emphasis supplied)

 Putting the foregoing cases together results in a construction of 11 U.S.C. § 554(c) with which the court agrees. The phrase "Unless the court orders otherwise" in 11 U.S.C. § 554(c) refers not only to a pre-closing order entered by the court, but also provides the court with discretion to enter an order after the initial closing of the case which allows for administration of an asset which might otherwise have been abandoned under that section. Because of the court's construction of the statute as stated above, the court does not need to rely on this mechanism to allow the estate's interest in the 2012 refund to now be administered by the Chapter 7 Trustee. However, to "fill the bottle" with all alternative reasons as to why the Trustee will be allowed to administer the asset, the court orders that whatever the effect the closing of the case may have had with respect to the estate's interest in the 2012 general income tax refund,

the court now orders "otherwise" as to the abandonment of that interest from the bankruptcy estate.

Thus, to summarize:

1. The reopening of the case is not a substantive act, and merely allows for consideration of the substantive issues addressed above.

2. Shultz did not schedule any portion of the general 2012 federal income tax refund, for some reason limiting scheduling of any refund from the Internal Revenue Service with respect to tax year 2012 to the earned income credit. As has been noted, "inquiry notice" on the part of the Chapter 7 Trustee does not relieve a debtor from properly scheduling a known or potential asset. Moreover, prior years' refunds do not have any necessary predictive effect on a present year's refund: debtors—not trustees—are in the best position to know whether or not their circumstances during a current tax year may result in a refund similar to that obtained in a prior year. In this case, hypothetically Shultz could have known that a combination of income reduction, expanded exemptions or deductions, and/or modification to a W–4 withholding request— could in fact result in no general income tax refund. No general income tax refund is exactly what was scheduled. The lack of formal scheduling of the general income tax refund is fatal to Shultz, and results in the conclusion that 11 U.S.C. § 554(c) did not operate to abandon the bankruptcy estate's pro-rata interest in the 2012 refund. *See, In re Mohring*, 142 B.R. 389, 395 (Bkrtcy.E.D.Cal.1992); *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995); *In re Rothwell*, 159 B.R. 374, 377 (Bkrtcy.Mass.1993).

3. By filing the "intercepting" application with the Internal Revenue Service during the pendency of the case, the Trustee effectively sought to administer the estate's interest in the 2012 federal income

tax refund, thus removing it from the category of a property "not otherwise administered at the time of the closing of the case" under 11 U.S.C. § 554(c).

4. Because the bankruptcy estate's interest in the 2012 federal income tax refund was not abandoned under any other section of 11 U.S.C. § 554 and is yet to be administered, the estate's interest in the refund remains property of the estate under 11 U.S.C. § 554(d), now subject to administration.

IT IS ORDERED as follows:

A. Case No. 12–23049 was properly reopened in response to the Trustee's Record No. 26 motion.

B. The interest of the bankruptcy estate in Case No. 12–23049 in the 2012 general income tax refund allowed to Charles Shultz and Chrystal Shultz—in the amount of $5,094.61—was not abandoned from the bankruptcy estate and is subject to administration for the benefit of the debtors' creditors as property of that bankruptcy estate.