DUSTIN P. HANSON, Petitioner and Respondent-Appellee, v. De KALB COUNTY STATE'S ATTORNEY'S OFFICE, Respondent (The Department of State Police, Petitioner-Appellant; Larry G. Trent, Director of State Police, Appellant).

Second District   No. 2—08—0002

Opinion filed May 27, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellants.

Charles G. Rose, of Sycamore, for appellee.

JUSTICE BURKE delivered the opinion of the court:

Thirty-two days after the circuit court of De Kalb County entered an order under section 10(a) of the Firearm Owners Identification Card Act (Act) (430 ILCS 65/10(a) (West 2006)), directing the Department of State Police (Department) to issue a firearm owner's identification (FOID) card to the petitioner in the original action, Dustin P. Hanson, the Department filed a "Motion to Vacate" the court's order. In the "Motion," the Department asserted that, because Hanson had a forcible felony conviction that was less than 20 years old, section 10 did not allow the court to order that he receive a FOID card. The court, apparently unaware that the motion was untimely, disagreed with the Department's interpretation of the law and

"denied" the "Motion." The Department, joined by Larry G. Trent, Director of State Police (Director), appealed. They now assert that the "Motion" was actually a petition under section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2006)), which the trial court should have granted.

We agree that the Department's motion was effectively a section 2—1401 petition. We further hold that the court's order that Hanson receive a FOID card was the result of a legal error that was apparent from his petition and the order granting it. Under the rule in *Collins v. Collins*, 14 Ill. 2d 178, 182-84 (1958), relief from an error of law so apparent is obtainable under section 2—1401, such that the Department stated a meritorious defense to Hanson's petition. However, we do not agree that the court should have granted the Department's petition outright. We deem that the court effectively treated Hanson's response to the "Motion" as a motion to dismiss under section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)). The court was wrong to grant such a motion, and we thus reverse the dismissal and remand the cause.

On February 24, 2007, the Department denied Hanson's application for a FOID card, basing its denial on Hanson's answer of "yes" to a question on the application form that asked if he had ever been convicted of a felony. Hanson attempted to appeal that denial to the Department, but the Department concluded that his application was not yet eligible for review.

Hanson then filed in the circuit court of De Kalb County a petition under section 10 of the Act, asking that the court override the denial. He alleged that he had led a law-abiding life since his August 26, 1999, burglary conviction[1] and that he sought a FOID card because he wished to resume hunting. Hanson served the De Kalb County State's Attorney with a copy of the petition. On September 24, 2007, the court held a hearing on the matter. Hanson presented a witness to his character, and his attorney represented that the State's Attorney's office had told him that it had no objections to Hanson's receiving a FOID card. The court that day ordered that the Department issue Hanson a FOID card.

On October 26, 2007, a Friday and the thirty-second day after the order's entry, the Department filed a "Motion to Vacate" the order. The Department alleged that, because the order directly affected it, it was a necessary party to the proceedings and that, under section 10(c)(1) of the Act (430 ILCS 65/10(c)(1) (West 2006)), the court could

---

[1]Burglary, as all concerned agree, is a forcible felony under Illinois law. 720 ILCS 5/2—8 (West 2006).

not order the issuance of a FOID card to a person who had been convicted of a forcible felony within 20 years. Hanson filed a response, asserting that he had served the State's Attorney, the only party on whom the Act required service, and disagreeing with the Department's interpretation of section 10(c)(1). Hanson further asserted that the Department was on notice of his intent to go to the circuit court for an order overriding the Department's denial; counsel had sent a letter dated "August 2007" to Larry Grubb in the Department, requesting the return of certain exhibits so that he could use them in the circuit court. A copy of that letter was attached to his response. The court held a hearing on the "Motion" on November 29, 2007. The timeliness of the "Motion" was not raised; however, the court was unpersuaded by the Department's interpretation of section 10(c)(1), and it "denied" the "Motion." The Department, joined by the Director, filed a notice of appeal on December 28, 2007.

The appellants assert that under this court's holding in *Margaretten & Co. v. Martinez*, 193 Ill. App. 3d 223, 228 (1990), the Department's "Motion," because it was filed more than 30 days after the relevant judgment, was necessarily a section 2—1401 petition. They further assert that, because section 10(c)(1) of the Act did not authorize the court to order the issuance of a FOID card to an applicant in Hanson's position, the Department had a meritorious defense, and that, because the facts of the case show that the Department appeared in the trial court as soon as it reasonably could have, it was diligent in both presenting its defense and filing its petition. Therefore, the appellants argue, the court should have granted the petition. Finally, the appellants assert that the Department has standing to pursue this appeal under the rule in *In re Detention of Hayes*, 321 Ill. App. 3d 178, 190 (2001). That decision held that an agency, which was not a party to the proceeding in the trial court, nevertheless had standing to directly appeal a trial court order that it contended was beyond the trial court's authority and directly affected the agency's operations. *Hayes*, 321 Ill. App. 3d at 190.

Hanson contests the appellants' standing to appeal and disputes their interpretation of section 10(c)(1), asserting that the Department thus lacked a meritorious defense. He has not otherwise contested the appellants' analysis of the Department's entitlement to section 2—1401 relief.

■ We begin by considering the source of this court's jurisdiction. We conclude that the Department timely filed a notice of appeal from the dismissal or denial of its section 2—1401 petition and that we thus have jurisdiction under Supreme Court Rule 304(b)(3) (210 Ill. 2d R. 304(b)(3)). Initially, one might think that the notice of appeal here was

untimely. The Department filed what looks like an untimely postjudgment motion, that is, one filed more than 30 days after the entry of the final judgment (735 ILCS 5/2—1301(e) (West 2006)). Under Illinois Supreme Court Rule 303(a)(1) (eff. May 1, 2007), only a *timely* postjudgment motion extends the time to appeal beyond 30 days after the final judgment. However, Illinois courts have repeatedly held that, because section 2—1401 is the only vehicle by which a civil litigant can attack a final judgment more than 30 days after its entry, trial and appellate courts must treat a filing that is too late to be a postjudgment motion as a section 2—1401 petition. See *In re Marriage of Stufflebeam*, 283 Ill. App. 3d 923, 928 (1996); *Margaretten*, 193 Ill. App. 3d at 228; *Northern Illinois Gas Co. v. Midwest Mole, Inc.*, 199 Ill. App. 3d 109, 115 (1990) (reviewing older cases).[2] We follow these cases and hold that the "Motion" was a section 2—1401 petition.

The parties dispute whether the appellants have standing to appeal. They analyze a group of cases that includes *Braglia v. McHenry County State's Attorney's Office*, 371 Ill. App. 3d 790 (2007), *Hayes*, and *People v. Pine*, 129 Ill. 2d 88 (1989), which considered whether a government agency has standing to appeal an order affecting it when it was not a party in the trial court. Although here the Director became a litigant for the first time on appeal, we conclude that the cases that the parties discuss are not relevant to the circumstances here. Here, the parties assume that the Department *was* a party in the trial court, a section 2—1401 petitioner. A section 2—1401 petition is the initial pleading in a new cause of action. See *Village of Island Lake v. Parkway Bank & Trust Co.*, 212 Ill. App. 3d 115, 120 (1991) ("A section 2—1401 petition, although filed in the same proceeding, is the commencement of a new cause of action and is not a continuation of the proceeding in which the prior judgment was entered"); see also *Burnicka v. Marquette National Bank*, 88 Ill. 2d 527, 530-31 (1982) ("a petition under the section is the filing of a new action, in which the petitioner must allege and prove a cause of action *** [and] in which the rules of pleading governing complaints in other civil cases are to be applied"). The parties do not now dispute whether the Department had standing to bring the section 2—1401 petition in the first place,

---

[2]This court has not applied this rule with perfect consistency, at least in cases where the appellant has not invoked it. See, *e.g.*, *Baca v. Trejo*, 388 Ill. App. 3d 193 (2009) (dismissing appeal where the postjudgment motion was untimely and appellant conceded the absence of a section 2—1401 claim).

and we therefore conclude that the Department has standing to appeal the ruling on its own section 2—1401 petition.[3]

We now turn to the merits of the matter. To state a claim for section 2—1401 relief, a petitioner must successfully allege "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). We review *de novo* a grant of judgment on the pleadings of a section 2—1401 petition or a dismissal of a section 2—1401 petition. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007).

The Department alleged that it acted diligently in asserting its defense and filing its petition; it stated that, because Hanson did not serve it with his petition, it could not have acted sooner. Hanson contested this, asserting that one of its employees knew well in advance that he would be filing a petition. Thus, the Department's diligence in presenting its defense was an unresolved issue of fact. Whether the Department had a meritorious defense, the issue on which the trial court disposed of the petition, is a more complex matter. We first consider whether a pure error of law can be the basis of a valid section 2—1401 claim. Under the rule in *Collins*, we conclude that it can. We then examine the Act to decide whether the trial court erred in ordering the Department to issue Hanson a FOID card. We conclude that it did.

Typically we say that a " 'section 2—1401 petition serves to bring before the court that rendered judgment "facts not appearing of record which, if known to the court at the time judgment was entered, would have prevented its rendition." ' " *In re Marriage of Johnson*, 339 Ill. App. 3d 237, 241 (2003), quoting *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993), quoting *In re Marriage of Travlos*, 218 Ill. App. 3d 1030, 1035 (1991). Here, the Department did not assert any nonrecord facts; rather, it asserted that the trial court had misinterpreted a statute. If the typical formulation, as given in *Johnson*, were an accurate statement of the entire scope of section 2—1401, then an entirely legal defense, such as that claimed by the Department, would not be cognizable under section 2—1401. However, as the supreme

---

[3]Unlike the Department, which filed the section 2—1401 petition, the Director was not a party below. Therefore, he may lack standing to appeal. However, his standing or lack of it in no way affects our ability to grant relief in this case. Any action we can take in this appeal will affect only the disposition of the Department's petition. The Director's presence as an appellant thus is an irrelevance.

court noted in *People v. Lawton*, 212 Ill. 2d 285, 297-98 (2004), nothing in the language of section 2—1401 limits its use to the correction of factual errors. Rather, the section replaces a group of older forms of action:

"Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2—1401(a) (West 2006).

Thus, to know the scope of the section, one needs to know the scope of the old forms of action.

In *Collins*, the supreme court held that, because section 2—1401 (then section 72 of the Civil Practice Act (Ill. Rev. Stat. 1955, ch. 110, par. 72)) incorporates the powers courts had under bills of review, a party could properly seek vacation of a judgment containing a particular error of law under section 2—1401. The *Collins* court explained the purpose of bills of review:

"Bills of review were formerly available for the purpose of obtaining relief from decrees for error apparent upon the face of the record. That remedy was not available as a substitute for an appeal or a writ of error, but it was available only for an error of law apparent on the record. It could not be availed of where the decree was merely the result of mistaken judgment, but was applicable where the decree was contrary to a rule of law or statutory provision. [Citations.] The error of law must be apparent from an examination of the record, as the court cannot look into the evidence in the case [citation] and in a chancery case that record is confined to the pleadings, process and decree. [Citation.]" *Collins*, 14 Ill. 2d at 183.

Because the pleadings were legally inconsistent with the decree, relief was available. *Collins*, 14 Ill. 2d at 183-84. The question is whether the Department has alleged a similar error here. That question turns on our interpretation of the law applicable to Hanson's rights to possess firearms and to attain a FOID card.

There are two statutes that impede Hanson's rights to possess firearms and to obtain a FOID card. First, section 24—1.1 of the Criminal Code of 1961 bars any person who has been convicted of a felony from possessing any firearm or any weapon listed in section 24—1. 720 ILCS 5/24—1 (West 2006). Section 24—1.1 contains one

relevant exception: it "[does] not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the *** Act." 720 ILCS 5/24—1.1(a) (West 2006). As a convicted felon, Hanson was barred under section 24—1.1 from possessing firearms, unless he could get relief under section 10 of the Act.

The second statute affecting Hanson's rights is the Act itself. The Act prohibits, except in limited circumstances, a person from acquiring or possessing any firearm, firearm ammunition, stun gun, or taser unless that person has in his or her possession a FOID card in his or her name. 430 ILCS 65/2 (West 2006). Section 8 of the Act provides that the Department "has authority to deny an application for" a FOID card "only if the Department finds that the applicant" met at least one of several enumerated criteria, which include the criterion that the applicant was "[a] person convicted of a felony under the laws of this or any other jurisdiction." 430 ILCS 65/8 (West 2006).

Section 10 of the Act details the process by which an applicant may obtain relief from an adverse Department decision (as well as from the prohibition on possession of firearms contained in section 24—1.1 of the Criminal Code). It provides as follows, in pertinent part:

> "(a) Whenever an application for a Firearm Owner's Identification Card is denied, *** the aggrieved party may appeal to the Director of the Department of State Police for a hearing upon such denial, revocation or seizure, unless the denial *** was based upon a forcible felony [or one of certain other offenses], in which case the aggrieved party may petition the circuit court in writing in the county of his or her residence for a hearing upon such denial ***.
>
> (b) At least 30 days before any hearing in the circuit court, the petitioner shall serve the relevant State's Attorney with a copy of the petition. The State's Attorney may object to the petition and present evidence. At the hearing the court shall determine whether substantial justice has been done. Should the court determine that substantial justice has not been done, the court shall issue an order directing the Department of State Police to issue a Card.
>
> (c) Any person prohibited from possessing a firearm under Sections 24—1.1 or 24—3.1 of the Criminal Code of 1961 or acquiring a Firearm Owner's Identification Card under Section 8 of this Act may apply to the Director of the Department of State Police or petition the circuit court in the county where the petitioner resides, whichever is applicable in accordance with subsection (a) of this Section, requesting relief from such prohibition and the Director or court may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:
> ***

(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a Firearm Owner's Identification Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety; and

(3) granting relief would not be contrary to the public interest." 430 ILCS 65/10(a), (b), (c) (West 2006).

The parties dispute which portion of section 10 of the Act governs here: the appellants argue that Hanson was required to meet the standards set forth in subsection (c) of section 10, while Hanson argues that only subsection (b) applies. The parties thus ask us to interpret the Act in order to determine which provisions control. As always, our primary goal in interpreting a statute is "to ascertain and give effect to the true intent of the legislature [citations], while presuming the legislature did not intend to create absurdity, inconvenience, or injustice." *In re D.D.*, 196 Ill. 2d 405, 418-19 (2001). The best indicator of legislative intent is the plain language of the statute, and a court should give that language its plain and ordinary meaning. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216 (2008).

Based on the above-quoted language, we interpret section 10 of the Act as creating two separate tracks for appeals of adverse Department decisions. Subsection (a) provides an avenue of appeal "[w]henever an application for" a FOID card is denied; under subsection (a), the party seeking recourse may appeal either to the Director or to the circuit court (whichever is applicable as described in subsection (a)). See 430 ILCS 65/10(a) (West 2006). In an appeal to the circuit court under subsection (a), the petitioner may obtain relief if he or she can establish after an evidentiary hearing that "substantial justice has not been done." 430 ILCS 65/10(b) (West 2006). However, subsection (c) provides a much more stringent test for "[a]ny person prohibited from possessing a firearm under Sections 24—1.1 or 24—3.1 of the [Criminal Code] or acquiring a [FOID card] under Section 8 of [the] Act."[4] 430 ILCS 65/10(c) (West 2006). From the structure of section 10, we conclude that the interplay between subsection (c) on one hand

---

[4]Section 10's description of section 8 as "prohibit[ing]" acquisition of a FOID card does not precisely match the language of section 8, which provides criteria under which the Department "has authority to deny an application"

and subsections (a) and (b) on the other is that subsection (c) supersedes the other two subsections when it is triggered, so that the otherwise-applicable subsection (b) standard does not apply to those people described in subsection (c). Thus, for any person who is prohibited from firearm possession under section 24—1.1 of the Criminal Code or prohibited from acquiring a FOID card under section 8 of the Act, subsections (a) and (b) do not apply, and subsection (c) provides the governing standard.[5]

■ Here, Hanson, a convicted felon, was barred under section 24—1.1 of the Criminal Code from possessing firearms and barred under section 8 of the Act from obtaining a FOID card. He was therefore required to pursue any relief from those prohibitions under section 10(c) of the Act. Because one of the requirements for relief under section 10(c) is that the applicant not have been convicted of a forcible felony within the past 20 years (430 ILCS 65/10(c)(1) (West 2006)), Hanson was not entitled to relief under section 10(c). The trial court erred in reaching the opposite result.

Is this error one that, under the rule in *Collins*, is cognizable under section 2—1401? We believe it is. Hanson's petition, admitting his 1999 burglary conviction, was legally inconsistent with the order that the Department give him a card. The *Collins* court did state that such an error of law can be corrected under section 2—1401 only "where the decree was contrary to a rule of law or statutory provision" and not where "the decree was merely the result of mistaken judgment." *Collins*, 14 Ill. 2d at 183. Here, though, the order was directly barred by the Act, and, therefore, the matter required no exercise of judgment by the trial court. The Department thus had a cognizable meritorious defense to Hanson's petition for a FOID card.

Before closing, we must address a final procedural matter. As noted at the outset, the trial court and the litigants believed

---

for a FOID card (430 ILCS 65/8 (West 2006)), but it captures the effect. See also 430 ILCS 65/5 (West 2006) (referring to section 8 as setting out the "qualif[ications]" for FOID card entitlement).

[5]Because subsection (c) applies whenever an applicant is prohibited under section 8 from obtaining a FOID card, and because section 8 provides the only reasons the Department may deny a FOID card, it would appear at first glance that our reading dictates that subsection (c) will apply in all adverse Department decisions (thus rendering subsections (a) and (b) entirely superfluous). However, we interpret subsection (c) as applying only when it is uncontested that the applicant is barred under section 8; subsections (a) and (b), which apply to all FOID card denials not covered by subsection (c), still control where the applicant argues that he or she should not be considered barred under section 8.

throughout the proceedings below that they were dealing with a motion to vacate, not a section 2—1401 petition. There is an important difference. A party responding to a motion may file a response, but a party responding to a section 2—1401 petition has the additional option of filing a motion to dismiss. Indeed, a party that responds to a section 2—1401 petition but fails to raise any affirmative defenses against the petition or deny any factual allegations in the petition waives the affirmative defenses (735 ILCS 5/2—613(d) (West 2006)) and admits the allegations (735 ILCS 5/2—610(b) (West 2006)). When applying on appeal the rule in *Margaretten* and *Stufflebeam* that a late postjudgment motion must be treated as a section 2—1401 petition, we must be careful that the retrospective reclassification of the filing does not deprive the other party of the opportunity to file a considered responsive pleading or motion to dismiss. If we were to treat the trial court's final decision as a denial of the section 2—1401 petition and reverse the denial outright, we would deprive Hanson of that opportunity.

Here, we can avoid unfairness by recognizing that the trial court ruled on the part of Hanson's response that asserted that the Department's filing was insufficient as a matter of law, that is, the part that disagreed with it on the interpretation of section 10. That part of Hanson's response was equivalent to a motion to dismiss under section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)). As the Department had adequately pleaded diligence in raising its defense, diligence in filing its petition, and a meritorious defense, the court erred in granting Hanson's motion. On remand, Hanson will therefore have the opportunity to file an additional appropriate motion or responsive pleading in which he may raise any affirmative defenses that he could have raised in the first instance had the trial court treated the Department's filing as a section 2—1401 petition.

For the reasons stated, we reverse the dismissal of the Department's section 2—1401 petition and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

O'MALLEY and JORGENSEN, JJ., concur.