2023 IL App (1st) 210886-U

SECOND DIVISION
August 8, 2023

No. 1-21-0886

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

BANK OF NEW YORK AS TRUSTEE FOR THE )
CERTIFICATE HOLDERS CWALT, INC, )
ALTERNATIVE LOAN TRUST 2005-76 )
MORTGAGE PASS-THROUGH CERTIFICATES, )
SERIES 2005-76, )
                            )
           Plaintiff, )
                            )
      v. )
                            )
WIESLAWA KOGUT, STEPHAN KOGUT a/k/a )
STEFAN KOGUT, MARTA KULESZA, JPMORGAN )
CHASE BANK, N.A., UNKNOWN OWNERS AND )
NON-RECORD CLAIMANTS, )    Appeal from the Circuit Court of
                            )    Cook County, Illinois
           Defendants. )
_____ )    No. 2008 CH 3118
                            )
MARTA KULESZA, )    Hon. Edward J. King,
                            )    Judge Presiding
           Petitioner-Appellant, )
                            )
      v. )
                            )
THE BANK OF NEW YORK MELLON, f/k/a Bank of )
New York as Trustee on behalf of the Holders of the )
Alternative Loan Trust 2005-76 Mortgage Pass-Through )
Certificates, Series 2005-76, )
                            )
           Respondent-Appellee. )

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Section 2-1401 petition was properly dismissed for lack of standing.

¶ 2    This case began as a mortgage-foreclosure action filed by plaintiff Bank of New York, now Bank of New York Mellon (BoNYM), on a residential property in which Marta Kulesza (Petitioner) held an interest. That action resulted in foreclosure and a judicial sale of the property that was confirmed in 2016. Presently before us is a petition under section 2-1401 of the Code of Civil Procedure to vacate all judgments in the foreclosure proceeding as void for lack of personal jurisdiction over Petitioner. See 735 ILCS 5/2-1401 (West 2016).

¶ 3    Petitioner's argument is that she was never properly served with notice of the foreclosure action because service took place at the resident property, and she did not live there at that time or ever. BoNYM argued, among other things, that Petitioner lacks standing to assert this argument in light of a bankruptcy action she filed. We agree with BoNYM and affirm the judgment on that basis.

¶ 4                              BACKGROUND

¶ 5              I. Petitioner's Interest in the Prospect Heights Property (2005-06)

¶ 6    In 2005, Petitioner's relatives, Wieslawa and Stephan Kogut, obtained a mortgage from BoNYM to purchase residential property in Prospect Heights (the Prospect Heights property). (It appears that Petitioner is the Koguts' niece, but elsewhere in the record there is a suggestion that she is a cousin—they are relatives, in any event.) By all accounts, the Koguts resided at the Prospect Heights property.

¶ 7    Petitioner's interest in the Prospect Heights property began in August 2006, when the Koguts executed a quitclaim deed to her and themselves. The Koguts executed the deed in

connection with a $300,000 home equity line of credit (HELOC) that the Koguts and Petitioner obtained from JPMorgan Chase Bank, N.A. (Chase Bank).

¶ 8    In applying for that HELOC, Petitioner told Chase Bank that the Prospect Heights property was her "primary residence." She listed the Prospect Heights property under the listing of "current address." She stated that the purpose of the HELOC was "home improvement." And when identifying "real estate owned," she listed another residential property in Wheeling, Illinois (the Wheeling property) as "rental property."

¶ 9                    II. BoNYM's Foreclosure Action (2008)

¶ 10    In January 2008, BoNYM filed a complaint to foreclose the mortgage on the Prospect Heights property. The suit named both the Koguts and Petitioner as defendants. On January 27, 2008, BoNYM purported to serve the summons and complaint on Petitioner via substitute service on Weislawa Kogut at that Prospect Heights property. (The issue of service, as noted, is a contested issue in the section 2-1401 petition under review, as Petitioner claims she never lived at the Prospect Heights property, making substitute service improper.)

¶ 11    In any event, Petitioner did not answer or appear in the foreclosure action. In June 2008, the circuit court found her in default, entered summary judgment against her and in favor of BoNYM, and issued a judgment for foreclosure and sale. (As Petitioner was not the only defendant, the litigation did not terminate at that time.)

¶ 12                    III. Petitioner files for personal bankruptcy (2010)

¶ 13    About two years after that June 2008 judgment against her, Petitioner and her then-husband filed for personal bankruptcy. Specifically, she and her husband filed a "no-asset" case on August 25, 2010. Petitioner did not list the Prospect Heights property, or the HELOC with

3

Chase Bank, on her schedule of assets and liabilities. The bankruptcy court discharged Petitioner in December 2010.

¶ 14          IV. The foreclosure action ends (May-August 2016)

¶ 15    Though Petitioner was defaulted and had judgment entered against her in 2008, the foreclosure litigation on the Prospect Heights property continued with the other defendants, including the Koguts. Ultimately, BoNYM prevailed, and the Prospect Heights property was sold on May 19, 2016. The court approved the sale on August 15, 2016.

¶ 16          V. Petitioner reopens her bankruptcy case (November-December 2016)

¶ 17    On November 1, 2016, Petitioner moved the bankruptcy court to reopen her case. She formally disclosed to the bankruptcy court on an amended "schedule" that, at the time she filed her bankruptcy action in August 2010, she "had an interest in some real estate, located at [address in Prospect Heights], improved with a single family home" that "she held in common with relatives, Stefan and Wieslawa Kogut."

¶ 18    She further explained that, as of the date she originally filed for bankruptcy in August 2010, the Prospect Heights property "was subject to a foreclosure proceeding in the Circuit Court of Cook County" in which Petitioner "was named as a defendant." She told the bankruptcy court that "Judgment of foreclosure was entered in May, 2015, on June 1, 2016, the Property was sold, and on August 15, 2016, the foreclosure court entered an order for possession."

¶ 19    She further noted that "[t]he foreclosure has not been concluded. Notwithstanding the order for possession, Stefan and Wieslawa Kogut are still living in the Property, and as of the date of this motion there has been no attempt to evict them."

¶ 20    Petitioner conceded in that bankruptcy filing that the Prospect Heights property "should have been listed on Schedule A, Real Property; [BoNYM] should have been listed on Schedule

D, Secured Claims; the Koguts should have been listed in Schedule H, Co-Debtors; and the foreclosure suit should have been included on the Statement of Financial Affairs."

¶ 21    The trustee then issued a written report of "no distribution" in which he stated that

"I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. *** I hereby certify that the estate of [Petitioner] has been fully administered. I request that I be discharged from any further duties as trustee."

¶ 22    On January 9, 2017, the bankruptcy court closed the case and discharged the trustee once more.

¶ 23                       VI. Petitioner files her section 2-1401 petition

¶ 24    Two and a half months after her bankruptcy case was closed for the second time, on March 20, 2017, Petitioner filed her section 2-1401 petition in the foreclosure action, alleging that all judgment orders entered in the foreclosure action were void for lack of personal jurisdiction, as she was never properly served with the complaint. Petitioner attached four affidavits, each of which stated that Petitioner did not live (and indeed had never lived) at the Prospect Heights property. Thus, when the process server placed the summons and complaint with her relative, that service was not effective as "substitute service" as to Petitioner.

¶ 25    As noted, BoNYM objected on several grounds. It alleged that Petitioner lacked standing to bring this claim, as her section 2-1401 claim belonged to her bankruptcy estate and was never properly discharged. Second, BoNYM claimed that her petition was barred by the doctrine of judicial estoppel. And third, said BoNYM, the petition was barred by *laches*.

¶ 26    Petitioner moved for judgment on the pleadings. An oral argument was held, but we lack a transcript of those proceedings. The circuit court denied the motion for judgment on the pleadings and dismissed the petition with prejudice. This appeal followed.

¶ 27                                    ANALYSIS

¶ 28    Our review here is *de novo*, as the court decided the section 2-1401 petition on documentary evidence and legal argument alone, without hearing any live witness testimony; we thus sit in the same position as the trial court and owe its judgment no deference. See *Cleeton v. SIU Healthcare, Inc.*, 2023 IL 128651, ¶ 26; *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007). We lack a transcript of the oral argument, and the court's written judgment order does not specify the basis for dismissing the section 2-1401 petition. But because our review is *de novo*, our review is not hampered. *Fields v. Schaumburg Firefighters' Pension Bd.*, 383 Ill. App. 3d 209, 223 (2008). And in any event, we may affirm the dismissal of a section 2-1401 petition on any basis in the record, regardless of the trial court's reasoning. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 497 (2000).

¶ 29    BoNYM's standing argument, as well as its argument regarding judicial estoppel and to some extent its *laches* argument, revolve around the same basic core facts. In a nutshell, when Petitioner first filed for bankruptcy in 2010, she did not include her interest in the Prospect Heights property on her "schedules"—her disclosures of assets, liabilities, and the like. It is uncontested that she should have done so; she claimed to have "no assets" when, in fact, she did. Petitioner reopened her bankruptcy action in 2016 to amend her schedules to include the Prospect Heights property and to list BoNYM's foreclosure action on the property. She included the detail that the property had already been sold, that the sale was judicially confirmed, and that

an order of possession had been entered. All that remained, she told the bankruptcy court, was to evict the Koguts from the property.

¶ 30     But in that written motion to the court, Petitioner omitted one rather crucial detail—that she had a cause of action to reclaim her interest in that property, to unwind that entire foreclosure proceeding as void for lack of personal jurisdiction, a claim that she was about to file via a section 2-1401 petition. Instead, she waited until after the Trustee determined that "there is no property available for distribution from the estate" and "the estate of [Petitioner] has been fully administered," resulting in the closing of the bankruptcy action, before she filed that section 2-1401 petition.

¶ 31     We first address BoNYM's standing argument, an affirmative defense. See *In re Application for Tax Deed*, 2018 IL App (5th) 170354, ¶ 41. BoNYM claims that the section 2-1401 petition is a separate legal claim. See *Hanson v. De Kalb City State's Attorney's Office*, 391 Ill. App. 3d 902, 906 (2009) (though it is collateral attack on existing judgment, section 2-1401 petition is independent cause of action). When she reopened the bankruptcy case in 2016, Petitioner had a duty to schedule that claim as an asset, like any other cause of action. But she did not do so. Thus, says BoNYM, while claims not pursued by the bankruptcy trustee before the case is closed are typically deemed "abandoned" and revert back to the debtor (here Petitioner), the doctrine of abandonment does not apply here, because a trustee can only be deemed to have abandoned *scheduled* claims, not unknown ones.

¶ 32     In a Chapter 7 bankruptcy, or "straight bankruptcy," the debtor's estate falls under the control of a trustee who is "responsible for managing liquidation of the estate's assets and distribution of the proceeds." *Law v. Siegel*, 571 U.S. 415, 417 (2014). "All legal or equitable interests of the debtor in property as of the commencement of the case" are part of the estate (11

U.S.C. § 541(a)(1)), including causes of action that have already been brought by or that have accrued to the debtor at the time of the bankruptcy petition. *In re Senior Cottages of America, LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

¶ 33 Once a trustee has been appointed, the " 'Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such cause of action.' " *Harris v. St. Luke University*, 114 B.R. 647, 648 (E.D. Mo. 1990) (quoting *Cain v. Hyatt,* 101 B.R. 440, 442 (E.D.Pa. 1989)); see *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988); *Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988).

¶ 34 As Petitioner is quick to note, if the asset is abandoned by the trustee—that is, if the bankruptcy case closes without the trustee administering that asset—then the asset reverts back to the debtor (here, Petitioner). 11 U.S.C. § 554(c); *Bledsoe v. Midland Funding, LLC*, 4:19-CV-02779-JAR, 2021 WL 694825, at *5 (E.D. Mo. Feb. 23, 2021).

¶ 35 If, on the other hand, the asset or claim is *not* scheduled, it *cannot* be deemed abandoned by the trustee. *Cusano v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001) ("If [debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [debtor]"); *Jeffrey v. Desmond,* 70 F.3d 183, 186 (1st Cir.1995); *Stein v. United Artists Corp.,* 691 F.2d 885, 893 (9th Cir.1982) (only property "administered or listed in the bankruptcy proceedings" reverts to debtor); *accord Hutchins v. IRS,* 67 F.3d 40, 43 (3d Cir.1995); *Vreugdenhill v. Navistar International Transportation Corp.,* 950 F.2d 524, 526 (8th Cir.1991) (property is not abandoned by operation of law unless debtor "formally schedule[s] the property before the close of the case"). "It is not enough that the

trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1)." *Vreugdenhill*, 950 F.2d at 526; see 11 U.S.C. § 521(a)(1).

¶ 36     And the duty to schedule an asset includes a duty to disclose it accurately and completely. It is long settled that "[a]ny debtor who files a Chapter 7 petition has a continuous, affirmative duty to disclose the following in a complete and accurate manner: (a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs." *In re Guenther*, 333 B.R. 759, 766 (Bankr. N.D. Tex. 2005) (quoting *In re Gartner*, 326 B.R. 357, 367 (Bankr. S.D. Tex. 2005)); see *In re Kirtley*, 533 B.R. 154, 164 (Bankr. S.D. Miss. 2015); *In re Schultz*, 509 B.R. 190, 202 (Bankr. N.D. Ind. 2014); *In re Wells*, 426 B.R. 579, 599 (Bankr. N.D. Tex. 2006).

¶ 37     The reason for this affirmative, continuous duty is obvious. "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules 'serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true.' " *Matter of Beaubouef*, 966 F.2d 174, 179 (5th Cir. 1992) (quoting *In re Urban,* 130 B.R. 340, 344 (Bankr. M.D.Fla. 1991)).

¶ 38     Thus, an asset will not be deemed abandoned by the trustee if " 'the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset.' " *Cusano*, 264 F.3d at 946 (quoting *In re Ozer,* 208 B.R. 630, 633 (Bankr. E.D.N.Y.1997); see *In re Adair,* 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000); *In re DeVore*, 223 B.R. 193, 198 (B.A.P. 9th Cir. 1998); *In re Shelton,* 201 B.R. 147, 155 (Bankr. E.D.Va.1996) (revoking technical abandonment of property, as information contained in debtor's

schedules did not contain full and complete information about trustee's residential property sufficient for trustee to make informed decision).

¶ 39    " '[T]here are no bright-line rules for how much itemization and specificity is required' " in determining whether an asset has been sufficiently disclosed on a schedule. *Cusano*, 264 F.3d at 946 (quoting *In re Mohring,* 142 B.R. 389, 395 (Bankr. E.D.Cal.1992)). But it is clear that "a debtor is not entitled to pick and choose which information it will give the trustee and what it can withhold." *In re Wheeler*, 503 B.R. 694, 697 (Bankr. N.D. Ind. 2013). At a bare minimum, "all material information must be disclosed." *Id*. The information must be sufficient to give the trustee "the ability to make a decision in the best interests of the estate or the relevant creditors." *In re Shelton,* 201 B.R. at 155. "[T]he issue is best viewed from the perspective of the trustees and creditors. Is it the kind of thing they would want to know?" *In re Wheeler*, 503 B.R. at 697.

¶ 40    With these principles in mind, we have little hesitation in concluding that Petitioner did not sufficiently disclose the Prospect Heights property and its status in her amended schedules. The case law repeatedly emphasizes the need for complete disclosure of assets, liabilities, and related financial affairs. Petitioner's amendment of the schedules was not sufficient for the trustee to have abandoned her section 2-1401 claim regarding the Prospect Heights Property.

¶ 41    In scheduling the property and disclosing the existence and status of the foreclosure lawsuit—that the bank had foreclosed on the property and sold it at a judicially confirmed sale— Petitioner was telling the trustee that the property was all but lost; for all practical purposes, it had ceased to *be* an asset, and all that remained was evicting the occupants, the Koguts. Petitioner was not entitled to withhold the fact that she was about to drop a bomb in that proceeding, a section 2-1401 petition that, if meritorious, would render every single judgment in that foreclosure void from start to finish and reinstate Petitioner's claim to that property. See *In*

10

*re Tennyson*, 313 B.R. 402, 405–06 (Bankr. W.D. Ky. 2004) (scheduling residential property as asset and listing mortgage was insufficient information, given that debtor did not list his claim for rescission of mortgage; "the real property and the individual claims against the mortgagor are distinct, separate assets," and "setting aside a mortgage could result in non-exempt equity going to unsecured creditors;" thus, trustee did not have sufficient information to have abandoned property, and "the claims remain property of the bankruptcy estate and the Chapter 7 trustee is the party with proper standing to pursue any or all of these claims.").

¶ 42    Allowing Petitioner to play that game would run against every decision we have cited above regarding the duty of complete and accurate disclosure. Returning back to the question posed in the decision of *In re Wheeler*, 503 B.R. at 697: After scheduling the Prospect Heights property and listing the foreclosure and judicially-confirmed sale of that property on her schedules, is the fact that Petitioner was about to file a claim that could upend the entire foreclosure action and restore her interest in the property "the kind of thing [a trustee and creditors] would want to know?" The answer is obviously yes.

¶ 43    Petitioner raises objections of a technical nature. For one, she says that her assertion of her due-process right to service of process is not a "claim" that required scheduling as an asset. For another, even if it did constitute an asset, it was not an asset she possessed circa 2010, when she first filed her petition; she had no right to file a section 2-1401 petition until 30 days after final judgment, which did not occur until 2016. See 735 ILCS 5/2-1401 (West 2016) (petitions may be filed "after 30 days from the entry" of "final orders and judgments"). Thus, says Petitioner, the trustee validly abandoned any claim that the estate may have had on the property, and she regained standing to raise this argument.

¶ 44    We do find these arguments compelling. As already noted, a section 2-1401 petition is, in fact, its own freestanding cause of action, even if it relates to another judgment it is collaterally attacking. *Hanson*, 391 Ill. App. 3d at 906. True, Petitioner's theory is grounded in a claim of due process, but the theory is no import; it is the fact that she had a cause of action that matters.

¶ 45    Nor are we convinced by Petitioner's argument that she was only required to schedule assets that she possessed as of the date of her original bankruptcy petition in 2010, and the section 2-1401 petition did not accrue until 2016 after final judgment and judicial confirmation of sale. For one thing, it is nobody's fault but Petitioner's that she did not schedule the Prospect Heights property back in 2010, when she told the bankruptcy court that she had "no assets." Had she scheduled it back in 2010 as required, she likewise would have been required to list the foreclosure action against that property in the Statement of Financial Affairs, as she concedes.

¶ 46    And even if Petitioner did not have actual knowledge of the foreclosure action back in 2010 (we recognize that legal notice of a lawsuit via service of process is different than actual knowledge of the suit), she obviously knew of her interest in the Prospect Height property back in 2010. Had she disclosed that property as an asset back then, the trustee surely would have discovered the existence of the foreclosure lawsuit. The property (at least according to Petitioner's HELOC application) was valued at over a million dollars. It is impossible to imagine that the trustee, back in 2010, would not have taken at least a cursory look at the property as a source for making Petitioner's creditors whole. Even a cursory review would have revealed the existence of the foreclosure lawsuit.

¶ 47    The trustee could then have taken whatever action he deemed necessary at that time, including challenging the default judgment against Petitioner for improper service. Or maybe the

trustee would have passed on the entire matter, deeming the case (and thus the property) unsalvageable. But the trustee would have had the information to make that informed decision.

¶ 48    Instead, Petitioner waited until the very convenient moment when the dye was all but cast in the foreclosure action to reopen her bankruptcy action, schedule the property as an asset along with a statement about the status of the foreclosure action that portrayed the foreclosure action as a *fait accompli*, but leave out the undeniably material fact that she was on the verge of attacking that foreclosure action and reclaiming her interest in the property.

¶ 49    Under no reading of bankruptcy law that we have cited above could we countenance Petitioner's actions. While we, as a state appellate court, do not often wade into bankruptcy law, there is no doubt that Petitioner owed a duty to disclose to the bankruptcy court that she was about to take a crack at invalidating the entire foreclosure action and reclaim her interest in the Prospect Heights property. Whether she was required to schedule her section 2-1401 petition as an "asset" or whether she was supposed to include it in her amended Statement of Financial Affairs, the conclusion is the same: Petitioner gave materially incomplete and misleading information to the trustee.

¶ 50    We thus hold that any claim that Petitioner might have on the Prospect Heights property, including her section 2-1401 petition, was not abandoned by the trustee. It remains with her bankruptcy estate. The trustee, and the trustee alone, would have standing to file that petition. Regardless of the reason that the circuit court may have dismissed it, Petitioner's section 2-1401 petition was properly dismissed for lack of standing.

¶ 51                              CONCLUSION

¶ 52    The judgment of the circuit court is affirmed.

¶ 53    Affirmed.